1
2
3
4
5
6
7
8        **IN THE UNITED STATES DISTRICT COURT**
9        **FOR THE EASTERN DISTRICT OF CALIFORNIA**
10
11   DIRECTV, INC.,                              CASE NO. CV-F-03-6718 OWW LJO
12                  Plaintiff,                   **FINDINGS AND RECOMMENDATIONS ON**
                                                  **DEFAULT JUDGMENT MOTION**
13        vs.                                    (Doc. 28.)
14   ORGIL McVAY,
15                  Defendant.
16   _____/
17                              **INTRODUCTION**

18        In this satellite piracy action, plaintiff DIRECTV, Inc. ("DIRECTV") seeks a $20,000 default

19   judgment against defendant Orgil McVay ("defendant"). Defendant has neither made an appearance nor

20   filed papers in this action. This Court considered DIRECTV's default judgment motion on the papers

21   and vacated the September 23, 2005 hearing, pursuant to this Court's Local Rule 78-230(c) and (h). For

22   the reasons discussed below, this Court RECOMMENDS to GRANTING DIRECTV default judgment

23   in the amount of $4,000, plus attorneys fees and costs.

24                    **FACTUAL AND PROCEDURAL BACKGROUND**

25        DIRECTV is a direct broadcast satellite system that delivers various television programming to

26   more than 10 million customers in the United States. DIRECTV electronically scrambles or encrypts

27   its satellite transmissions to prevent unauthorized viewing of its programming.  To view the

28   programming, customers must subscribe to and create an account with DIRECTV and obtain an access

                                        1

1   card.

2   _____On December 1, 2003, DIRECTV filed this action alleging defendant purchased and used two

3   pirate access devices consisting of programmer call "Netsignia 210 Programmer," and a printed circuit

4   board called a "Wildthing II Super Unlooper."  (Complaint ¶11.)  The devices are designed to permit

5   access to DIRECTV television programming without payment to DIRECTV. DIRECTV's complaint

6   alleges causes of action for (first) unauthorized reception of satellite signals in violation of the Federal

7   Communications Act of 1934 ("Communications Act"), 47 U.S.C. § 605[1], (second) unauthorized

8   interception of electronic communications in violation of the Electronic Communications Privacy Act

9   ("Wiretap Act"), 18 U.S.C. §§ 2510-2521,[2] (third) possession of pirate access devices in violation of

10  section 2512(1)(b), (fourth) wilful assembly or modification of devices, 47 U.S.C. §605(e)(4), and (fifth)

11  conversion.

12      On March 26, 2004, defendant was personally served with the summons and complaint.

13  Defendant has neither responded to the complaint nor appeared in this action. Default was entered

14  against defendant on August 3, 2004. DIRECTV seeks default judgment against defendant to award

15  statutory damages under its fourth claim.  The evidence establishes that defendant is not in military

16  service or an infant.  (Doc. 30, Exh. D to Decl. of Burke.)

17                          **ANALYSIS & DISCUSSION**

18                          **Default Judgment Standard**

19      A court (not clerk) default judgment is required when the claim is for an amount that is not

20  certain or capable of being made certain by computation. *See* F.R.Civ.P. 55(b)(2).  Generally, the default

21  _____

22      [1]    47 U.S.C. § 605 *et seq.*  prohibits the unauthorized use of wire or radio communications, including unauthorized interception and broadcast of pirated cable or broadcasting programming.

23      [2]    Unless otherwise indicated, all statutory references will be to Title 18 of the United States Code, the

24  Wiretap Act.

25      Section 2511(a) prohibits intentional interception or endeavor to intercept any wire, oral, or electronic communication.  Section 2520(a) provides a private civil right of action for violation of the Wiretap Act for "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used."

26

27      DIRECTV argues that it has not sought judgment pursuant to §2520 due to this Court's prior ruling.  In *DIRECTV v. McVay,* CV-F-03-6718, the Court denied recovery under §2520 because (1) DIRECTV did not provide evidence which proved the 7-factors considered to award damages under §2520(c)(2) (See *DIRECTV, Inc. v. Huynh,* 2004 WL 1123830)),

28  and (2) DIRECTV sought a "per violation" award which is not permitted under §2520(c)(2)(B).

entered by the clerk establishes a defendant's liability:

> Rule 55 gives the court considerable leeway as to what it may require as a prerequisite to the entry of a default judgment. "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages will be taken as true." (citations omitted). *Geddes v. United Financial Group,* 559 F.2d 557, 560 (9th Cir. 1977).

*Televideo Systems, Inc. v. Heidenthal,* 826 F.2d 915, 917-918 (9th Cir. 1987).

A full scale evidentiary hearing on a default judgment is not required in every case. *See* F.R.Civ.P. 55(b)(2); *James v. Frame,* 6 F.3d 307, 310 (5th Cir. 1993). The amount of damages may be fixed by affidavits or declarations. *Transportes Aereos De Angola v. Jet Traders Invest. Corp.,* 624 F.Supp. 264 (D. Del. 1985); *see Davis v. Fendler,* 650 F.2d 1154 (9th Cir. 1981).

Granting default judgment is within a court's sound discretion. *Draper v. Coombs,* 792 F.2d 15, 924 (9th Cir. 1986). Factors whether to grant default judgment include:

1.   The substantive merits of plaintiff's claim;

2.   The sufficiency of the complaint;

3.   The amount of money at stake;

4.   The possibility of dispute as to any material facts in the case;

5.   Whether default resulted from excusable neglect; and

6.   "The strong policy of the Federal Rules of Civil Procedure favoring decisions on the merits."

*Eitel v. McCool,* 782 F.2d 1470, 1471-12472 (9th Cir. 1986).

With the entry of default in the case at hand, this Court may accept the factual allegations of DIRECTV's complaint as true to assess liability.  DIRECTV pursues default judgment solely for statutory damages under the Communications Act for violation of section 47 U.S.C. §605(e)(4) or in the alternative for violation of 47 U.S.C. §605(a).

### Plaintiff's Federal Communications Claims

47 U.S.C. § 605 addresses unauthorized publication or use of wire or radio communications and provides in pertinent part:

> (a) . . . no person receiving, assisting in receiving . . . any interstate . . . communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect or meaning thereof, except through authorized channels of

transmission or reception, (1) to any person other than the addressee, his agent, or attorney . . . No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

. . .

(e)(3)(A) Any person aggrieved by an violation of subsection (a) of this section . . . may bring a civil action in a United States district court or in any other court of competent jurisdiction.

47 U.S.C. § 605(e)(3)(C)(i)(II) authorizes statutory damages "not less than $1,000 or more than $10,000, as the court considers just." Damages are to be computed, "at the election of the aggrieved party," in accordance with any of the following: (I) actual damages suffered by the aggrieved party as a result of the violation and any profits of the violator; or (II) statutory damages for each violation of subsection (a) in a sum of not less than $1,000 or more than $10,000, as the court considers just. 47 U.S.C. § 605(e)(3)(C)(i)(II). 47 U.S.C. §605(e)(3)(C)(ii) authorizes damages up to $100,000 if the court finds the violation was willfully committed for commercial advantage or private financial gain. Alternatively, if "the court finds that the violator was not aware and had no reason to believe that his acts constituted violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $250." 47 U.S.C. §605(e)(C)(iii). In the alternative, DIRECTV seeks to recover under 47 U.S.C. §605(a). "To establish liability under § 605(a), a plaintiff must prove that the defendant received or assisted in receiving a communication to which he was not entitled." *In re DIRECTV, Inc.,* 2004 WL 2645971, *9 (N.D.Cal. 2004).

As pertinent to this motion, Plaintiff seeks $20,000 in damages under federal communications and cable statutes. DIRECTV alleges claims against defendant under 47 U.S.C §605(a) (First Claim) and under 47 U.S.C. §605(e)(4) (Fourth Claim). In the first claim, DIRECTV alleges that McVay received and assisted others in receiving DIRECTV's satellite transmissions without authorization. (Complaint ¶15.) In the Fourth Claim, DIRECTV alleges that defendant knowingly manufactured assembled or modified the devices knowing or with reason to know that they would be used in unauthorized decryption. (Complaint ¶28.) The Fourth Claim also alleges that defendant actively

1  programed the access cards to surreptitiously obtain DIRECTV's satellite programming.  (Complaint
2  ¶28.)

3        The specific amount of statutory damages assessed pursuant to § 605 rests within the sound
4  discretion of the court. *Cablevision of S. Conn., Ltd. P'ship v. Smith,* 141 F.Supp.2d 277, 286
5  (D.Conn.2001). Courts have used a variety of methods to calculate damages under § 605, including (1)
6  assessing the maximum statutory rate; (2) estimating the amount of services the defendant pirated and
7  applying a multiplier to that figure; (3) adopting the plaintiff's estimate of the amount of services pirated;
8  and (4) where there has been no evidence of the plaintiff's actual usage or commercial advantage,
9  applying the statutory minimum for each pirated device. *DIRECTV, Inc. v. Getchel,* 2004 WL 1202717,
10 at *2 (D.Conn. 2004).  *See also*, *DirecTV v. Haskell*, 344 F.Supp.2d 761, 763-764 (D.Me. 2004)

11       DIRECTV has filed hundreds of similar lawsuits across the country, and in Mexico and Canada.
12 (Sichler Decl. ¶14.)  In these cases, the courts have varied widely on award of damages.  For instance,
13 in *DIRECTV, Inc. v. Hedger*, 322 F.Supp.2d 879 (W.D.Mich.2004), DIRECTV alleged that defendant
14 purchased and used a single Bootloader device to decrypt and view, and assisted others in decrypting
15 and viewing, DIRECTV's encrypted satellite signal.  The Court awarded DIRECTV  statutory damages
16 of $10,000 under 47 U.S.C. §605 and 18 U.S.C. §2520 (Wiretap Act).  In an extremely large award, the
17 Court in *DIRECTV, Inc. v. Adkins*, 320 F.Supp.2d 474, 477 (W.D.Va. 2004), awarded $10,000 per
18 device pursuant to 605(e)(4) against each of four defendant who purchased 205, 15, 20, and 82
19 bootloaders, respectively, and sold or redistributed them.  In another large per violation award, the Court
20 in *DirecTV, Inc. v. McDougall*, 2004 WL 2580769, 5 (W.D.Tex. 2004) awarded Plaintiff statutory
21 damages of $70,000 ($10,000 per each of the seven different devices intended for resale) pursuant to
22 605(e)(4).

23       Some courts have awarded minimal statutory damages. *See, e.g., DirecTV, Inc. v. Perrier,* 2004
24 WL 941641, at *3 (W.D.N.Y. Mar. 15, 2004) (awarding $2,000 in damages under § 605(e)(3)(C)(i)
25 where the complaint alleged that the defendant had purchased two pirate access devices); *DIRECTV, Inc.*
26 *v. Kaas,* 294 F.Supp.2d 1044, 1048 (N.D.Iowa 2003) (awarding damages of $1,000 under §
27 605(e)(3)(C)(i) where the complaint alleged that the defendant had purchased a single pirate access
28 device and there was no evidence that the defendant profited from the device or even used the device);

5

1   *DirecTV v. Haskell*, 344 F.Supp.2d 761, *765 (D.Me.,2004) (Following the lead of several courts, this

2   Court awards $1,000 for Haskell's violation of § 605(a) by virtue of his purchase and use of the device.);

3   DIRECTV, Inc. v. Anderson 2005 WL 2104590, *2 (D.Or.) (D.Or.,2005) ( the court exercises its

4   discretion to award $1,000 in statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II) for two pirate

5   access devices.)

6          Some court have refused to award any damages.  In *DIRECTV, Inc. v. Taylor*, 2004 WL 1878337

7   (D.Or. 2004), the court declined to award damages. The court said there was no direct evidence as to

8   how many times defendant used pirate access devices, if at all, or actually received or assisted others in

9   receiving plaintiff's satellite television signal.  Similarly, in *DirecTV, Inc. v. Christomos*, 2004 WL

10  2110700 (D.Or. 2004), the Court declined to award statutory damages due to lack of evidence that the

11  defendant actually received or assisted others in receiving plaintiff's satellite television signal.  Accord

12  DIRECTV, Inc. v. Taylor 2005 WL 2104593, *2 (D.Or.) (D.Or.,2005) (Because there is no evidence

13  Wethered successfully intercepted DIRECTV's transmissions, the court declines to award statutory

14  damages.)

15         Some courts have held that an award under 605(e)(4) targets commercial pirating.  *Directv, Inc.*

16  *v. Albright,* 2003 WL 22956416, at *2 (E.D.Pa. 2003) (holding that a reasonable reading of subsection

17  (e)(4) demonstrates that it was intended to target upstream manufacturers and distributors, not the

18  ultimate consumer of pirating devices, such as defendant). *Accord  DIRECTV, Inc. v. Montes*, 338

19  F.Supp.2d 352, 356 (D.Conn. 2004) (declining to award 605(e)(4) damages) and *DIRECTV, Inc. v.*

20  *Getchel*, 2004 WL 1202717, *3 (D.Conn. 2004) (declined to award damages where there was no

21  allegation or evidence that defendant was other than a consumer).

22         Plaintiff argues that it is entitled to 2 (the number of pirate access devices) times $10,000 in

23  statutory damages.  Plaintiff cites *Community Television Systems, Inc. v. Caruso*, 134 F.Supp.2d 455,

24  460-461 (D.Conn 2000) for the proposition that each device purchased and used by a defendant

25  constitutes a separate violation of the Act.  In *Community Television System,* the court assessed the

26  maximum statutory award of $10,000.  In that case, the defendants had purchased and used only a single

27  pirate access device.  The issue of possession and use of multiple pirate access devices was not before

28  the Court. "The allegations in a complaint regarding the monetary amount of damages that should be

granted in a default judgment are not controlling, and the mere assertion that defendants acted willfully is insufficient to justify enhanced damages." *Kingvision Pay Per View, Ltd. v. Ortega,* 2002 WL 31855367, *2 (N.D.Cal.2002). "[S]ince plaintiff's allegations of willfulness bear directly on the question of damages, the mere assertion that defendant acted willfully is insufficient to justify enhanced damages." *Kingvision Pay-Per-View, Ltd. v. Dailey,* 2002 WL 596806, *2 (N.D.Cal. 2002).

Plaintiff also cites *Cablevision of Southern Conn., Ltd. Partnership v. Smith*, 141 F.Supp.2d 277, 287 (D.Conn.,2001). In *Cablevision of Southern Conn*, the court assessed damages of $5,000 for defendant's violation of section 605(a) and $190,000 for defendant's other 19 violations of section 605(e)(4), and awarded Cablevision statutory damages totaling $195,000 pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II).

DIRECTV provides evidence of "actual damages suffered by the plaintiff." DIRECTV provides evidence of its value of the services a person has access to, the value of subscription and movies viewed only once, the value of the programming purchased by a typical high-end subscriber, and the average bill sent to such subscribers. DIRECTV estimates that its daily damages are $7.53, which it multiplies by the number of days that defendant used the devices (1,308) for damages of $9,848.24. DIRECTV states that its actual damages does not include the significant expense incurred in investigating and preventing privacy. There is no evidence that defendant "significantly profited from his violations of the statute or induced or assisted others in engaging in similar misconduct." *Perrier,* 2004 WL 941641, p.4.

DIRECTV states that it requested in the complaint that the Court award damages of $10,000 per Pirate Access Device purchased and used by defendant and does not request any other amount, such as its lost profits. Because DIRECTV does not seek other damages, the Court declines to evaluate the evidence in support of DIRECTV's actual damages.

Here, the allegations do not support a conclusion that defendant was more than an ultimate consumer. There is no evidence that he distributed or profited from the purchase of the devices or intended them for resale. Therefore, an award of damages for violation of 605(e)(4) is not warranted.

Nonetheless, the default establishes that McVay purchased multiple devices and a reasonable inference is that he used or assisted others in the interception of the satellite transmission. Accordingly, an award under §605(a) of $2,000 for each of the 2 violations is appropriate.

/////

7

1

**Request for Attorney's Fees**

2    DIRECTV requests an award of attorneys' fees of $3,444.36 and costs to be established under

3 Fed.R.Civ.P. 54.

4    A party aggrieved by a violation of 47 U.S.C. §605(e)(3)(B)(iii) is entitled to award of reasonable

5 attorney's fees and costs.   Section 605(e)(3)(B)(iii) mandates that courts "direct the recovery of full

6 costs, including reasonable attorney's fees to an aggrieved party who prevails." Section §605 provides

7 for recovery only of "reasonable" attorneys fees and costs.  To determine a "reasonable" attorney fee

8 award, district courts generally start by calculating the "lodestar" amount (the product of multiplying the

9 number of hours reasonably expended on the litigation by a reasonable hourly fee).  *See Hensley v.*

10 *Eckerhart*, 461 U.S. 424, 433-437, 103 S.Ct. 1933, 1939- 1941 (1983); *City of Burlington v. Dague*, 505

11 U.S. 557, 561, 112 S.Ct. 2638, 2641 (1992).  The fee applicant bears the initial burden of substantiating

12 the hours worked and the rate claimed. *Strange v. Monogram Credit Card Bank of Georgia,* 129 F.3d

13 943, 945 (7th Cir. 1997).

14    DIRECTV states that it incurred attorneys fees of $1,229.36 in prosecuting this action up to the

15 filing of this motion.  Two law firms were involved, Danner & Martyn ($72.37 requested fees), and

16 Buchalter, Nemer, Fields & Younger ($1,156.90 requested fees) currently.  DIRECTV argues that since

17 the services provided spanned activities relating to all four defendants, DIRECTV divided the total

18 amount of fees required by 4. The amount requested for Danner & Martyn of $72.37 is substantiated by

19 the time sheet and by the chart of attorney activity.  (Doc. 30, Exh. E and F to Decl. of Sizanne Burke.)

20    In contrast to prior motions, counsel has provided a chart which breaks down the fees by date

21 and law firm.  The chart corroborates the amount of fees requested for work performed by each law firm.

22    The qualifications, however, of the attorneys who performed work from Danner & Martyn are

23 not provided.  The rates appear to be from $115 to $180 per hour.  The work performed was drafting the

24 complaint and preliminary case management. The amount requested for this firm, $72.37, could be

25 considered reasonable, but it is also speculation as to whether the amount is reasonable without knowing

26 the attorney's qualifications.  Therefore, the amount is denied.

27    For the attorneys from Buchalter, Nemer who performed work, the only qualifications provided

28 are for attorneys Suzanne Burke and for Brandon Tran. These individuals' initials do not appear on the

1  submitted billing statements in Exhibit E to this motion.  Therefore, the request for $1,156.7 is denied.

2      DIRECTV also requests fees incurred for preparing this motion for default judgment.

3      Two attorneys have incurred fees: Suzanne Burke, a 1993 graduate of Fordham University

4  School of Law, a rate of $325 per hour and Brandon Tran, a 2002 graduate of the University of

5  California, Los Angeles School of Law, at $215 per hour.  Ms. Burke incurred 1.5 hours on this motion

6  and anticipates an additional 3 hours for preparing for and attending the hearing on this motion.  (4.5

7  hours x $325 = $1,462.5.)  Brandon Tran incurred 3.5 hours in preparing this motion (3.5 hours x $215

8  = $752.50).  Total fees requested for the motion are $2,215.00.

9      A district court should calculate this reasonable hourly rate according to the prevailing market

10  rates in the relevant community.  *Schwarz v. Secretary of Health & Human Services*, 73 F.3d 895, 906

11  (9th Cir. 1995).  The relevant community is "typically the community in which the district court sits."

12  *Id.*  An exception exists where plaintiffs have proven that "local counsel was unavailable, either because

13  they are unwilling or unable to perform because they lack the degree of experience, expertise, or

14  specialization required to handle properly the case."  *Schwarz v. Secretary of Health & Human Services*,

15  73 F.3d at 906 citing *Gates v. Deukmejian*, 987 F.2d 1392 (9th Cir. 1993).

16      The prevailing rate in the relevant community is the "rate prevailing in the community for similar

17  work performed by attorneys of comparable skill, experience, and reputation."  *Barjon v. Dalton*, 132

18  F.3d 501.  This Court has held in other litigations that the prevailing rate for top attorneys in the area is

19  in the range of $225 to $250 per hour, with incremental decreases for attorneys of lesser experience and

20  for staff.

21      A reasonable rate for Ms. Burke is $225 per hour.  Thus, her fees are (1.5 hours x $225 =

22  $337.50.)

23      A reasonable rate for Mr. Tran has been held in prior motions as $175 per hour.  Thus, his fees

24  are (3.5 hours x $175 = $612.50).     Total fees awarded are $950.00.

25                          **Statute of Limitations**

26      In the prior motion for default judgment against McVay, filed on August 24, 2004, DIRECTV

27  sought a default judgment for unauthorized interception of electronic communications in violation of

28  the Electronic Communications Privacy Act ("Wiretap Act"), 18 U.S.C. §§ 2510-2521.  On October 13,

2004, this Court denied recovery under the Wiretap Act, but did not preclude "default judgment under its other claims, in particular pursuant to the Communications Act, upon a showing <u>such claims are not barred by statutes of limitations</u>." (Doc. 24, p.6:20-22) (emphasis added.)

In the instant motion, pursuant to its claims under the Federal Communications Act, DIRECTV argues that its claims were filed within the statute of limitations.

The Federal Communications Act of 1934, 47 U.S.C. §605, does not provide an express statute of limitations for private actions brought for violation of the Act. Where a federal statute fails to provide any limitations period, the court generally borrows the limitations period from the most closely analogous state statute. *North Star Steel Co. v. Thomas*, 515 U.S. 29, 34, 115 S.Ct. 1927, 132 L.Ed.2d 27 (1995).

This Circuit has not yet addressed the statute of limitations under the Federal Communications Act. In *Prostar v. Massachi*, 239 F.3d 669 (5th Cir.2001), the Fifth Circuit held that "the three-year limitations period articulated in the Copyright Act governs [plaintiff's] FCA claims." *Id.* at 678. The Fifth Circuit initially found that the tort of conversion provided the closest state-law analogue to plaintiff's claims under 47 U.S.C. § 605, but declined to apply the limitations period under Louisiana conversion law to claims brought under 47 U.S.C. § 605 because the "application of state conversion law in each of the fifty states would result in widely varying limitations periods" and undermine the implementation of the FCA." *Id.* at 676. The Third Circuit, however, applied a state law statute of limitations. The Third Circuit held that the two-year statute of limitations period applicable to Pennsylvania's piracy statutes governed claims under 47 U.S.C. § 650. *Kingvision Pay-Per-View v. 898 Belmont, Inc.,* 366 F.3d 217 (3d Cir.2004). The Third Circuit acknowledged that "federal district courts have applied the federal limitations period under the Copyright Act to FCA claims when the only state law from which to borrow a limitations period was a general conversion law," but that such cases are not determinative where a more analogous state statute exists."

The Court determines that it need not resolve the issue of which statute of limitations applies. The statute of limitations is an affirmative defense which was waived by entry of default. *In re Estate of Ferdinand E. Marcos Human Rights Litigation*, 978 F.2d 493, 495 n.2 (9th Cir. 1992), *cert. denied*, 508 U.S. 972 (1993); *See also*, *U.S. v. DeTar*, 832 F.2d 1110, 1114 (9th Cir. 1987) (The statute of

limitations is not jurisdictional. It provides an affirmative defense, which is waived in this circuit if it is not asserted before or at trial.)  In this case, default has been entered.  Therefore, a defect in filing under the applicable statute of limitations, if any, has been waived.

**CONCLUSION**

For the reasons discussed above, this Court RECOMMENDS to:

1.    GRANT the motion for default judgment in favor of DIRECTV, Inc. and against defendant Orgil McVay the amount of $4,000, pursuant to 47 U.S.C. §605(a),

2.    GRANT the request for attorneys' fees in the amount of $950.00, and

3.    GRANT the request for costs to be awarded pursuant to Rule 54.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72-304.  Within 10 court days after service of these findings and recommendations on the parties, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties and the magistrate judge in compliance with this Court's Local Rule 72-304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Responses to objections shall be filed and served within 10 court days after service of the objections in compliance with this Court's Local Rule 72-304(d).  A copy of the responses shall be served on the magistrate judge.  The district judge will review the magistrate judge's findings and recommendations, pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    September 19, 2005            /s/ Lawrence J. O'Neill**
b9ed48                                         UNITED STATES MAGISTRATE JUDGE

11